THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MATTIE ANN COLEMAN,       *
o/b/o J.K.C,              *
                          *
    Plaintiff,          *
                          *
vs.                   *    CIVIL ACTION 09-00802-B
                          *
MICHAEL J. ASTRUE,      *
Commissioner of        *
Social Security,       *
                          *
    Defendant.         *

## ORDER

Plaintiff Mattie Ann Coleman (hereinafter "Plaintiff")
brings this action on behalf of her minor child, J.K.C.
(hereafter "J.C."), seeking judicial review of a final decision
of the Commissioner of Social Security denying her claim for
child supplemental security income under Title XVI of the Social
Security Act, 42 U.S.C. § 1381 et seq. ("SSI"). On December 15,
2010, the parties consented to have the undersigned conduct any
and all proceedings in this case. (Doc. 27). Thus, this case
was referred to the undersigned to conduct all proceedings and
order the entry of judgment in accordance with 28 U.S.C. § 636(c)
and Fed.R.Civ.P. 73. (Doc. 28). Oral argument was held on
December 15, 2010. Upon careful consideration of the
administrative record and the parties' briefs, it is **ORDERED** that
the decision of the Commissioner be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income benefits on behalf of her son J.C. on July 10, 2007, alleging that her son has been disabled since May 8, 2007.[1]  (Tr. 12, 122-24, 149).  In claiming benefits, Plaintiff alleges disability due to learning disability, hearing and speech problems, and asthma. (Tr. 96, 113, 247). Plaintiff's application was denied initially (Tr. 12), and she filed a timely Request for Hearing  (Tr. 100).  Subsequently, on December 15, 2008, Plaintiff filed a duplicate SSI application on J.C.'s behalf. (Tr. 125-138). On May 6, 2009, Administrative Law Judge D. Burgess Stalley ("ALJ") held an administrative hearing which was attended by Plaintiff, her son J.C., and her representative.  (Tr. 61-80).  On June 16, 2009, the ALJ issued an unfavorable decision finding that J.C. is not disabled.  (Tr. 9-25).

Plaintiff filed a request for review, and provided additional evidence, namely an August 12, 2009 evaluation prepared by Robert Defrancisco, Ph.D., to the Appeals Council (hereinafter "AC").  On August 27, 2009,  the AC denied the

---

[1] Plaintiff filed an earlier application for supplemental security income benefits on behalf of her son J.C. on October 3, 2003.  Plaintiff's claim for benefits was denied by the Administrative Law Judge on August 23, 2005. (Tr. 83-91)

request for review.(Tr. 5-7). In denying review, the AC found that the additional information did not provide a basis for reviewing the ALJ's decision. Upon Plaintiff's request for reconsideration, the AC set aside its August 27, 2009 decision, and in reconsidering Plaintiff's request, the AC again concluded that the additional information submitted did not provide a basis for reviewing the ALJ's decision. (Tr. 1-4). Thus, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 416.1481. The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to section 205(g) of the Act, 42 U.S.C. §§ 405(g).

## II. ISSUES[2]

1. Whether the decision of the ALJ is supported by substantial evidence;

2. Whether the ALJ failed to consider the combination of J.C.'s impairments;

3. Whether the AC erred in not remanding this case based on new evidence.

---

[2]While Plaintiff argues that the ALJ erred because she did not follow the Social Security guidelines and did not conduct the hearing in compliance with the Agency regulations, she has not developed these arguments, or set forth any facts in support of her assertions. Accordingly, these issues are deemed abandoned and are denied as a result.

## II. FACTUAL BACKGROUND

J.C. was born on February 12, 2002. He was 5 years old and attending kindergarten when his application was submitted. At the time of the administrative hearing on May 6, 2009, J.C. was 7 years old and was attending kindergarten for the second time. (Tr. 16, 43, 67). At the hearing, J.C.'s mother testified that he had repeated kindergarten and that he was being promoted to the first grade for the next school year. (Tr. 69). She also reported that J.C. was receiving speech therapy in school, and was in a special education class for math. According to Plaintiff, J.C. was showing improvement in reading, but not in math. (Tr. 70).

Plaintiff testified that J.C. suffers from asthma, but had not experienced any recent flare-ups which required emergency treatment. (Tr. 71). Plaintiff also testified that J.C. has had problems with his ears, and that tubes have been placed in his ears. According to Plaintiff, J.C. is doing fine with the tubes, and the tubes have helped to improve his speech "a little bit". (Tr. 71-73). Plaintiff also testified that sometimes you can understand J.C. when he speaks, and sometimes you cannot. (Tr. 73).

Plaintiff testified that J.C. is able to bathe, brush his teeth, and dress himself. (Tr. 77). She also reported that J.C. is proficient on the computer and likes to play video games. (Tr. 75-76). According to Plaintiff, J.C. plays with the neighborhood children, and does not have any behavioral problems at home or at school. (Tr. 75-77).

**III.  ANALYSIS**

**A.   Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to

support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. June 14, 1999).

**B. Childhood Disability Law**

The Personal Responsibility and Work Opportunity Act of 1996, which amended the statutory standard for children seeking supplemental security income benefits based on disability, became effective on August 22, 1996. See Pub. L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c). The definition of "disabled" for children is:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

See 42 U.S.C. § 1382c(a)(3)(C)(I), 20 C.F.R. § 416.906.[3] The regulations provide a three-step sequential evaluation process

---

[3] On September 11, 2000, the Commissioner published Final Rules for determining disability for a child under the age of 18. See 65 Fed. Reg. 54,747, corrected by 65 Fed. Reg. 80,307. These rules became effective on January 2, 2001 and apply to Plaintiff's claim. See 65 Fed. Reg. at 54,751.

for determining childhood disability claims. 20 C.F.R. §
416.924(a).

At step one, a child's age/work activity, if any, are
identified to determine if he has engaged in substantial gainful
activity. At step two, the child's physical/mental impairments
are examined to see if he has an impairment or combination of
impairments that are severe. Under the regulations, a severe
impairment is one that is more than "a slight abnormality or a
combination of slight abnormalities that causes no more than
minimal functional limitations." 20 C.F.R. § 416.924(c). To the
extent the child is determined to have a severe impairment, at
step three, he must establish that the impairment results in
marked and severe functional limitations. 42 U.S.C. §
1382c(a)(3)(C)(I). The regulations set forth that an
"impairment(s) causes marked and severe functional limitations
if it meets, medically equals or functionally equals the
listings." 20 C.F.R. § 416.924(d).

A child's impairment(s) meets the Listings' limitations  if
he actually suffers from limitations specified in the Listings
for his severe impairment. 20 C.F.R. § 416.926(d). A child's
impairment medically equals the Listings if his limitations are
at least of equal severity and duration to the listed
impairment(s). Id. Where a child's  impairment or combination of

impairments does not meet or medically equal any Listing, then the Commissioner must determine whether the impairment or combination of impairments results in limitations which functionally equal the criteria for a Listing.[4]  Id.

## C. Discussion

### 1. ALJ's Decision

In this action, the ALJ issued an unfavorable decision on June 16, 2009.  The ALJ determined that while J.C. has the severe impairments of asthma, a phonological disorder, and a history of chronic otitis media, they do not meet, medically equal or functionally equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P. (Tr. 15). The ALJ also found that J.C. has "less than marked" limitations in his ability to acquire and use information, in interacting and relating with others, and in health and physical well-being, and that he does not have any limitations in attending and completing tasks, moving about and manipulating objects, or caring for himself. (Tr. 19-25).  Accordingly, the ALJ concluded

---

[4] In making this assessment, the reports of the State Agency medical consultants, reports of other treating, examining and non-examining medical sources, and the claimant's symptoms, including pain and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, are all taken into consideration. 20 C.F.R. §§ 416.927, 416.929; and SSR 96-5, 96-6p and 96-7p.

that because J.C. does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, he is not disabled under the Act. (Tr. 25).

**2. Record Evidence**

The academic records reflect that during 2006, at age four, J.C. was attending Monroeville Headstart. (Tr. 183). J.C. was referred for the individualized education program because of a delay in his communication skills. Articulation testing revealed that J.C. had a severe delay in communication skills; however, his language scores indicated a mild delay in language, but not significant. (Tr. 183) His Headstart teacher reported that he was very difficult to understand; however, he tried to complete tasks, interacted well with peers and participated in activities in the classroom. She also reported that he completed puzzles, attempted to cut, drew, colored, and wrote the first letter of his name. She opined that J.C. needed speech therapy. (Tr. 167, 183).

An individualized education program (hereinafter "IEP") was established for J.C. covering November 2006 through September 2007. The IEP provided that J.C. would receive speech therapy on a weekly basis in small group resource sessions. (Tr. 183). A IEP progress report dated March 12, 2007 reflects that J.C. was

now talking with understanding and that he was moving his lips, top and bottom, when communicating. It was also noted that J.C. was doing well in small group settings, and that he was able to initiate a conversation with at least two or three sentences. The report also reflects that JC was receiving ten minutes of one-on-one sessions with his teachers. (Doc. 200).

Academic records for the 2007-2008 school year reflect that J.C. attended kindergarten and continued to receive speech therapy. The IEP for the 2007-2008 school year reflect that J.C. had severe delay in communication skills. It was noted that "[e]rrors in speech consist of substitutions and omissions ... with 60 sound errors." J.C.'s teacher reported that he got along well with his peers and that he made progress in identifying and writing some of the letters of the alphabet. (Tr. 317). In order to improve his articulation skills, J.C. was to receive speech services two times per week (thirty minute sessions) in a resource setting during the 2007-2008 school year. (Tr. 317).

In an IEP student profile for the 2007-2008 school year, it was noted that J.C. had made some progress during kindergarten, but he was unable to master all skills needed for first grade. With respect to articulation, the profile reflects that J.C. made considerable progress in speech/articulation, and improved

from 60 sound errors (during testing in Spring 2007) to 42 sound errors (during testing in Spring 2008). (Tr. 324).

J.C.'s teacher reported that J.C. reacted more with teacher and peers than at the beginning of the year, and that his speaking ability and social skills, as well as his maturity level, improved during the 2007-2008 school year. She also reported that he had a problem completing tasks correctly, reading and forming sounds and pronouncing and blending words. According to the teacher, in the classroom, J.C. had received peer tutoring, small group modeling, and slower pacing. The teacher opined that J.C. needed to continue speech therapy and that he needed improvement in reading, math, and social skills. (Tr. 324).

The IEP profile reflects that although J.C. had made progress in kindergarten, due to his academic difficulties, he was not ready for first grade, and that for the 2008-2009 school year, math and reading goals would be added to his IEP. J.C. was to be reevaluated at the beginning of the 2008-2009 school year. (Tr. 324).

J.C. repeated kindergarten during the 2008-2009 school year. (Tr. 351). He was re-evaluated in the fall of 2008. (Tr. 346, 347). His teacher reported that he was able to count to 20 and identify some basis shapes, but he could not identify the

numbers to twenty. (Tr. 275). Work samples reflected that J.C. struggled to write his name and to write the numbers after counting items. (Tr. 346). For the 2008-2009 school year, his IEP was modified to include supplemental services for math by the special education teacher/paraprofessional for up to five days per week. (Tr. 275). With respect to reading, J.C.'s teacher reported that he was able to demonstrate phonemic awareness by identifying initial sounds in words and was able to use letter-sounded relationships to decode printed words. She further noted that J.C. struggled in reading due to his speech delay. (Tr. 274). For the 2008-2009 school year, supplemental services for reading by the special education teacher/paraprofessional for up to five days per week was included in his IEP. (Tr. 274).

With respect to articulation/language, the report reflects that J.C.'s moderate-severe articulation delay negatively impacted his ability to communicate. (Tr. 273). Further, J.C. had several language deficits including not understanding/ using appropriate vocabulary, not adjusting language to fit specific situations, not initiating and maintaining age appropriate conversation, not expressing himself effectively and not using verbal skills to solve problems. (Tr. 344, 346-347). For the

2008-2009 school year, his IEP also included one-on-one thirty minute speech services twice per week. (Tr. 273).

The IEP report for the 2008-2009 school year reflects that when J.C. was administered the Goldman Fristoe test of Articulation 2 in the spring of 2009, he had 29 sound errors which was an improvement from 42 sound errors in August of 2008. It was further noted that in the area of articulation, J.C. had worked very hard and had make a lot of improvement. (Tr. 348). With respect to math, the report reflects that J.C. continued to struggle with identifying his numbers to 20 and adding, and that he did a good job matching items to numbers from one to ten. Additionally, it was noted that J.C. now knew most of his shapes, but still had trouble naming a few of them, and naming coins such as dimes and nickels. (Tr. 349). With respect to reading, it was noted that J.C. had a lot of success in reading since repeating kindergarten. He was able to blend phonics into one-syllable words. Additionally, he was able to sound words, but not automatic. He benchmarked in all areas of DIBELS; although he still did not know all of his letters and sounds. His teacher also reported that he was beginning to have problems with his reading and spelling. (Tr. 350).

J.C.'s teacher reported that overall, he completed his work on time although he rushed through at times. She also noted

that he participated in group activities although he was still shy and on the quiet side. He was also able to get along with others and was described as a sweet little boy. His teacher opined that he would continue to need additional services from a special education teacher in order to be successful in first grade. (Tr. 351).

The report also noted that J.C. was not as reluctant to speak out during the 2008-2009 school year like he had been before, that he was always cooperative and pleasant during therapy, and that he worked hard and tried to please. (Tr. 351). According to the report, J.C. was to continue to receive speech services and special education assistance in math and reading during the 2009/2010 school year. (Tr. 351).

Finally, J.C.'s mother reported during the 20008-2009 school year that J.C. enjoys playing games and playing on the computer. She also reported that he gets along well with family members, classmates, and teachers, and that she was pleased at how successful J.C. has been at completing his homework and class work. She further reported that she wished he did a better job cleaning his room. (Tr. 351).

Medical Evidence

The relevant evidence of record reveals that J.C. has a history of chronic ear problems and asthma. (Tr. 332, 352, 364,

375-76, 414, 448, 455). An audiological evaluation on May 9, 2007, revealed a slight to mild hearing decrease bilaterally (Tr. 358-363). On examination on June 13, 2007, James H. Pennington, M.D., noted J.C.'s history of asthma and found that J.C. has a middle ear effusion, and unremarkable nasal and oropharynx (Tr. 364). He diagnosed chronic otitis media, and recommended bilateral myringotomy and PE tubes (placement of ear tubes) (Tr. 364). Dr. Pennington performed bilateral myringotomy and insertion of ear tubes on July 11, 2007 (Tr. 410).

On August 27, 2007, Francis W. Sullivan, M.D., an Agency physician, concluded that J.C. has the "severe" impairment of upper respiratory infection, recurrent otitis media and phonological disorder, but they do not meet, medically equal, or functionally equal the requirements of any impairment that are presumptive of disability (Tr. 414). He opined that J.C. has less than marked limitations in the developmental domains of acquiring and using information, interacting and relating with others, moving about and manipulating objects, and health and physical well being. He also determined that J.C. has no limitations in the developmental domains of attending and completing tasks, and caring for himself (Tr. 416-417). In Dr. Sullivan's report, he indicated that J.C. indeed has speech

errors, which were likely related to excessive thumb sucking, and that the speech errors should improve with therapy and placement of the tubes in his ears. (Tr. 419).

J.C. underwent speech and language evaluation by Beth Hardaway, a speech language pathologist, and Carrie C. Love, a clinical audiologist, at the University of South Alabama Speech and Hearing Center on November 29, 2007 (Tr. 441-443, 455-58). Testing revealed a forward tongue position and limited mobility and control of tongue and lips, essentially normal sensitivity for the right ear and slightly abnormal left hearing (Tr. 442, 462), below normal receptive and expressive language skills (Tr. 456, 461), and "significant language and articulation delay when compared to typically developing children his age." (Tr. 442, 457). It was recommended that J.C. be enrolled in intensive language and articulation therapy at school, on an individual basis, if possible, and that he be enrolled in the Center's summer semester if the family could travel to Mobile. It was also suggested that J.C.'s mother work closely with the school to monitor J.C.'s academic performance and to request psychoeducational testing if his academic problems persisted. (Tr. 443).

Following the issuance of the ALJ's decision denying benefits on June 16, 2009, Robert DeFrancisco, PhD, prepared a

report dated August 12, 2009 regarding his physiological examination of J.C. Dr. DeFrancisco observed that J.C. has a slight speech pronunciation problem, but that his speech is basically understandable. (Tr. 448). Administration of the Wechsler Intelligence Scale For Children, Fourth Edition (WISC-IV) revealed a verbal Intelligence Quotient (IQ) of 77, a performance IQ of 75, and full scale IQ of 72. Dr. DeFrancisco found that the scores indicated that J.C. is functioning in the lower end of borderline intelligence. (Tr. 449-450). Dr. DeFrancisco determined that J.C.'s processing speed is his relative strength, and that his reasoning skills, as well as his visual motor, speed and memory skills are in the borderline range. Dr. DeFrancisco noted that J.C.'s language seems to be getting better and better, and that he will likely struggle in school based on his IQ functioning. (Id.)

### 3. Issues

**Whether the ALJ erred in finding that J.C. has less than marked limitation in acquiring and using information and in interacting and relating with others, and no limitation in attending and completing tasks.**

In her brief, Plaintiff argues that the ALJ committed reversible error by not awarding J.C. benefits. Plaintiff contends that the ALJ's findings with respect to acquiring and using information, attending and completing tasks, and interacting and relating with others are not supported by substantial evidence. (Doc. 18 at 14). Based upon a careful review of the record, the undersigned finds that the ALJ did not err in concluding that J.C. does not have marked limitations in the domains of acquiring and using information, in interacting and relating with others, and attending and completing tasks. Rather, the record contains substantial evidence which supports the ALJ's findings and reveals that she carefully considered the relevant evidence, including the hearing testimony, the academic records, and medical records, in finding that J.C. is not disabled.

## Acquiring and Using Information

In her brief, Plaintiff argues that J.C. has a marked impairment in the domain of acquiring and using information. According to Plaintiff, the ALJ pinpointed several different tasks that an unimpaired child J.C.'s age should be able to complete, including rhyming words, counting, using words to ask questions, telling stories, and reading street signs; however, the evidence reveals that J.C. is not able to engage in any of these tasks. (Doc. 18 at 11).

Contrary to Plaintiff's assertions, the ALJ's finding that JC has a less than marked limitation in his ability to acquire and use information is supported by substantial evidence. In finding that J.C. has a less the marked limitation in his ability to acquire and use information, the ALJ found as follows:

> According to the Goldman Fristoe 2 Test of Articulation, the claimant has a severe delay in communication skills; and his language scores indicated that he has a mild delay in language, but not significant. The claimant has been receiving speech therapy to improve his articulation skills since the 2006-2007 school year. (Exhibit 6E). In November 2006, the claimant's teacher noted on a Teacher's Individualized Education Program (IEP) Input Survey, that he responds and participates in class but needs to improve sound/letter recognition. (Exhibit 4E). Progress reports from the claimant's school indicate that he has continually made improvement in speech therapy. (Exhibits 6E, 11E, and 12E). In the fall of 2008, the claimant was reevaluated and found to require special services for math, reading, and speech. (Exhibit 11E). At the hearing, the claimant's mother said that his grades in math and reading improved this year, and he will be promoted to the 1st grade. She also reported that he is proficient on the computer, and can download his own games to play. The undersigned concludes that the claimant has retained the ability to make adequate progress in school. The overall record shows that the claimant has less than marked limitations in this area.

(Tr. 20).

Contrary to Plaintiff's assertions, the ALJ's finding that JC has a less than marked limitation in his ability to acquire and use information is supported by substantial evidence. While it is true that J.C. has experienced academic difficulties and had to repeat kindergarten after school officials determined that he had not mastered the skills necessary for first grade, the record reflects that J.C. was provided speech therapy and special education assistance in math and reading while repeating kindergarten, and that his performance improved as a result. For instance, his sound errors on the Goldman Fristie test of Articulation 2 improved between August 2008 and the spring of 2009, he benchmarked in all areas of DIBELS, and made progress in math, such as counting to twenty and matching items to numbers one to ten. In addition, his teacher noted that he completed his work on time and that he participated in group activities. Indeed, even J.C.'s mother reported to school officials that she was pleased at how successful J.C. had become at completing his homework and class work. Further, Dr. Sullivan, a State agency physician, reviewed J.C.'s records and concluded that J.C. has a less than marked limitation in the area of acquiring and using information, and that his speech errors would improve with therapy and with placement of tubes in his ears. (Tr. 416-19). The overwhelming record evidence reflects that while it is true that J.C. continues to have some

academic challenges, J.C.'s speech continues to improve, and he was able to successfully master the skills necessary to be promoted to first grade. Accordingly, the undersigned finds that the ALJ did not err in concluding that J.C. has less than marked limitations in the domain of acquiring and using information.

Interacting and Relating with Others

Plaintiff also argues that J.C. has an extreme limitation of function in the domain of interacting and relating with others. Plaintiff states that while the ALJ's opinion indicates that a child without an impairment of J.C.'s age should be able to, among other things, use words instead of actions to express himself, be able to initiate and participate in conversations, use increasingly complex vocabulary and grammar, and speak clearly enough that both familiar and unfamiliar listeners can understand what he says most of the time, J.C. can do none of those things. (Doc. 18 at 12). However, substantial evidence supports the ALJ's finding that J.C. had a less than marked limitation in the domain of interacting and relating with others.

In finding that J.C. has less than marked limitation in this area, the ALJ concluded as follows:

> The claimants teacher reported that he does fine
> socially, but it was very difficult to understand
> his speech. She noted that she had to ask the

claimant to repeat words and to refrain from
thumb sucking (Exhibit 4E). Ms. Coleman testified
that the claimant has no behavior problems at
school and gets along with everyone. He also
plays with the children in his neighborhood.
The State agency medical consultants found the
claimant has less than marked limitation in
this domain. (Exhibit 7F).It is concluded that any
limitation which the claimant may have in the
domain of interacting and relating with others is
less than marked.

(Tr. 22).

Substantial evidence supports the ALJ's finding that J.C.
has a less than marked limitation in interacting and relating
with others. The evidence reflects that while attending head
start, articulation testing revealed that J.C. had a delay in
communication skills, his teacher reported that he was very
difficult to understand, and his mother reported problems
understanding him. J.C. was approved for special services which
enabled him to receive speech therapy at school. The school
records reflect that with therapy, J.C. has made considerable
progress in speech/articulation. In the 2008/2009 school year,
J.C.'s teacher reported that his speaking ability and social
skills improved, that he got along with his peers, that he was
cooperative and pleasant, that he participated in group
activities, that the was less reluctant to speak out than
compared to the previous year, and that he was cooperative and
pleasant. (Tr. 351). J.C.'s mother likewise reported that he
got along with classmates, teachers and family members and had

no discipline problems. (Tr. 75, 77, 271, 351) This overwhelming evidence supports the ALJ's finding that J.C. has a less than marked limitation in interacting and relating with others.

## Attending and Completing Tasks

Plaintiff argues that the ALJ's finding that J.C. had no limitation in attending and completing tasks was incorrect; however, she fails to point to any specific evidence in the record to support her argument. In finding that J.C. has no limitation in this area, the ALJ found:

> The claimant's mother reported no problems in this domain, and school records do not reflect any limitation regarding attending and completing tasks. The state agency medical consultant found no limitation in this domain. (Exhibit 7F). It is concluded that the claimant [has] no limitation in this area.

(Tr. 21).

The ALJ's finding that J.C. has no limitation in completing tasks is supported by substantial evidence. As noted supra, the record evidence reveals that while J.C. has some speech and academic challenges, he has worked hard to overcome them and has had success in competing assigned tasks. For instance, during J.C.'s first attempt at kindergarten during the 2007-2008 school year, J.C.'s teacher reported that he had problems completing tasks correctly; however, during the next school year, J.C. received special education instruction in math and reading, as

well as speech therapy, and his teacher reported that J.C. completed his tasks. Additionally, J.C. successfully mastered the skills for promotion to first grade. Moreover, the record is devoid of any evidence that J.C. had any problems completing task at home. In fact, J.C.'s mother reported that she was pleased with his success at completing his homework and class work. This evidence supports the ALJ's finding that J.C. had no limitation in the domain of attending and completing tasks.

Based on the totality of the evidence that was before the ALJ, the undersigned finds that the ALJ did not err in concluding that J.C. does not have marked limitations in at least two domains, or an extreme limitation in one domain such that he functionally meets a listing.

> **Whether the ALJ failed to properly consider the combination of J.C.'s impairments.**

Plaintiff alleges that the ALJ erred by not acknowledging the combination of J.C.'s impairments in determining that he is not disabled. In the ALJ's decision, she concluded that while J.C. has severe impairments, he does not have an impairment or combination of impairments that meet or equal any listing. (Tr. 16).

In Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991), the Eleventh Circuit held that an ALJ's statement that the claimant did not have "an impairment or

combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" evidenced consideration of the combined effect of the claimant's impairments. See also Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (holding that the ALJ's finding that the claimant had several injuries which were serious, but that "he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1. . ." was evidence that he considered the combined effects of his impairments)(citing Jones, 941 F.2d at 1533); Sneed v. Barnhart, 214 Fed. Appx. 883, 887 (11th Cir. 2006)(finding that the ALJ can satisfy his duty by stating that he considered whether the claimant suffered from any impairment or combination of impairments).

As noted supra, in this case, the ALJ expressly found that J.C. does not have an impairment or combination of impairments that meets or medically equals one of the listing. In so holding, the ALJ clearly considered the combined effect of J.C.'s impairments pursuant to the dictates of Jones, 941 F.2d at 1533. Thus, Plaintiff's argument that the ALJ did not consider all J.C.'s impairments in combination in making her determinations must fail.

**Whether the AC erred in failing to remand this case to the ALJ to consider additional evidence submitted on appeal.**

In her brief, Plaintiff argues that the AC erred in failing to remand this case to the ALJ for consideration of additional evidence. According to Plaintiff, this case should be reversed and remanded due to new and material evidence presented to the AC, namely the report from Dr. DeFrancisco, which was submitted to the AC following the ALJ's decision. Plaintiff states that the ALJ's decision was "obviously issued without considering Dr. DeFrancisco's report and certainly without properly weighing the argument submitted by counsel." (Doc. 18 at 6). Plaintiff further argues that Dr. DeFrancisco's report was so significant, it would have likely changed the administrative outcome.

"When a claimant challenges both the ALJ's decision to deny benefits and the decision of the AC to deny review based on new evidence, 'a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.'" Poellnitz v. Astrue, 349 Fed. Appx. 500, 501 (11th Cir. 2009)(quoting Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262, 1265-66 (11th Cir. 2007)). Generally, a claimant is allowed to present new evidence at each stage of the administrative process. Ingram, 496 F.3d at 1260-61; Poellnitz, 349 Fed. Appx. at 503. "The AC must consider new, material and chronically relevant evidence and must review the case if the ALJ's actions, findings or conclusion is contrary to the weight of the evidence

currently of record". Id. at 503. (quoting 20 C.F.R.
404.970(b)).

Section 405(g) permits a district court to remand an
application for benefits to the Commissioner by two methods:
sentence four or sentence six of the statutory provisions.
Poellnitz, 349 Fed. Appx. at 503-504. Sentence six remands are
"available when evidence not presented to the Commissioner at
any stage of the administrative process requires further
review." Ingram, 496 F. 3d at 1267. Sentence six "does not grant
a district court the power to remand for reconsideration of
evidence previously considered by the [AC]". Id. at 1269.
Thus, remand to the AC is warranted under sentence six when 1)
new, noncumulative evidence exists, 2) the evidence is material,
and 3) good cause exists for the claimant's failure to submit
the evidence at the administrative level. Id. at 1267. A
sentence four remand is proper when the evidence was properly
before the Commissioner, but "the [AC] did not adequately
consider the additional evidence." Id. at 1268 (quotation
omitted). To warrant a sentence four remand, the Court must
either find that the decision is not supported by substantial
evidence, or that the Commissioner incorrectly applied the law
relevant to the disability claim. Poellnitz, 349 Fed. Appx. at
504.

When reviewing the AC's denial of review under sentence four, the court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the appeal council must consider in making its decision whether to review an ALJ's decision." <u>Robinson v. Astrue</u>, 365 Fed. Appx. 993 (11th Cir. 2010) (quotation omitted). "New evidence" is evidence that is non-cumulative, and "material" evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." <u>Robinson</u>, 365 Fed. Appx. at 996 (quoting <u>Milano v. Bowen</u>, 809 F.2d 763, 766 (11th Cir. 1987).

While it is clear from a review of the administrative record that Dr. Francisco's report was new as it did not exist as of the date of the ALJ's June 16, 2009 decision, the undersigned finds that the report is not material because it would not have changed the administrative outcome. In his report, Dr. Francisco found that J.C. has pronunciation problems but opined that J.C.'s speech was basically intelligible, and was getting better. Additionally, while Dr. Francisco found that J.C. has borderline low end intelligence and that he will struggle in school as a result, this was not sufficient to change the administrative outcome in light of the academic records which show that J.C. has and is continuing to make progress academically. <u>See</u> <u>generally</u> <u>Sellers v. Barnhart</u>, 246

F. Supp. 2d 1201, 1211 (M.D. Ala. 2002). ("A diagnosis is an insufficient basis for a finding that an impairment is severe."). As noted supra, the overwhelming evidence reflects that while J.C. has experienced speech problems and academic challenges, he has been provided speech therapy and special education assistance in math and reading which has enabled him to make great progress, and master the skills necessary to enter first grade. Given the record evidence which reflects J.C.'s steady progress when provided appropriate speech therapy and special education assistance, there is no basis for finding that Dr. DeFrancisco's opinion that J.C. has borderline lower end intelligence and will struggle in school would likely have changed the administrative outcome. Thus, the AC did not err in denying review.

## IV. CONCLUSION

For the reasons set forth, and upon careful consideration of the administrative record, the oral argument, and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income for her minor child, be **AFFIRMED.**

**DONE** this **19th** day of **January, 2011.**

_____/s/ SONJA F. BIVINS_ _____
UNITED STATES MAGISTRATE JUDGE